ORAL ARGUMENT NOT YET SCHEDULED

---

No 16-1118

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

WALKER BROADCASTING COMPANY, INC. v. FEDERAL
COMMUNICATIONS COMMISSION

---

**Appeal of Order of the Federal Communications Commission**

---

**BRIEF FOR APPELLANT**

---

A. Wray Fitch III
Gammon & Grange, PC
8280 Greensboro Drive
7th Floor
McLean, VA 22102
Tel: (703) 761-5013
Cell: (703) 489-5004
awf@gg-law.com


Dated: June 20, 2016                    *Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1) of this Court, Appellant Walker Broadcasting Company, Inc. submits the following certificate:

**A.    Parties and Amici**

The parties in this Court are:

*Appellant*

      Walker Broadcasting Company, Inc.

*Appellee*

      Federal Communications Commission

This Court has not granted any party leave to intervene or participate as amicus curiae at this time.

**B.    Rulings Under Review**

The ruling under review is the Federal Communication Commission's order captioned *In the Matter of Walker Broadcasting Company, Inc. Application for License to Cover Construction Permit, Application for Construction Permit and Petition for Eligible Status and Entity Status and Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding,* FCC 16-30, File Nos. BLCDT-20090402AOD

i

and BPCDT-20080319ADH; AU Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269, Memorandum Opinion and Order, (rel. Mar. 18, 2016) 31 FCC Rcd. 2395 (2016).

### C.    Related Cases

Appellant previously requested a Writ of Mandamus from this Court in *In re Walker Broadcasting, Inc.*, No 16-1066. The Writ of Mandamus was denied.

Currently pending before the Court is *Latina Broadcasters of Daytona Beach, LLC v. Federal Communications Commission, et al.,* Case Nos. 16-1065, 16-1069. This case involves the qualification of a low power television licensee to participate in the FCC Incentive Auction.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Walker Broadcasting Company, Inc. states as follows:

Walker Broadcasting Company, Inc. is a New York corporation. It has no parent company, and has not issued any shares or debt securities to the public; thus, no publicly-held company owns ten percent or more of its stock. Insofar as is relevant to this litigation, Walker Broadcasting Company, Inc.'s general nature and purpose is to construct, and operate radio and television stations.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..........................................................................1

STATUTES AND REGULATIONS ....................................................................4

STATEMENT OF THE CASE............................................................................4

STANDARD OF REVIEW ...............................................................................14

SUMMARY OF THE ARGUMENT ..................................................................16

STATEMENT OF STANDING ..........................................................................21

ARGUMENT ..................................................................................................22

   **I.   The Commission's Treatment of Walker Is Arbitrary and Capricious. 23**

     **a.   The Commission's Treatment of Walker Is Contrary to Precedent Granting Channel 14 License Applications with Late Filed Interference Studies.**...........................................................................24

     **b.   The Commission's Treatment of Walker Is Contrary to Precedent That Disfavors Automatic Expiration.** ...........................................28

     **c.   The Commission's Treatment of Walker Is Contrary to Precedent and Past Procedure Where the Commission Issues Deficiency Letters.**............31

   **II.  The Commission's *Order* Is Arbitrary and Capricious Because the Commission Failed to Adequately Consider the Equities Warranting the Grant of the License Application.** ....................................................**34**

   **III. Walker Is Eligible to Participate in the Incentive Auction** ....................**37**

CONCLUSION ...............................................................................................41

CERTIFICATE OF SERVICE ..........................................................................46

iv

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Trucking Ass'ns, Inc. v. Federal Motor Carrier Safety Admin*, 724 F.3d 243 (D.C. Cir. 2013) ........................................................................22

*AT&T Corp. v. FCC*, 236 F.3d 729, 734 (D.C. Cir. 2001) .............................. 15, 16

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) ....................................14

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841 (D.C. Cir. 1970).............16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................21

*Melody Music v. FCC*, 345 F.2d 730 (D.C. Cir. 1965) ................................. 16, 26

*Nat'l Ass'n of Broadcasters v FCC*, 789 F.3d 165, (D.C. Cir. 2015).......................9

*Nat'l Assoc. for Better Broadcasting v. FCC*, 80 F2d 270 (D.C. Cir. 1987) ..........28

*Office of Communication of United Church of Christ v. FCC*, 465 F.2d 519 (D.C. Cir. 1972) ....................................................................................28

*Radio Athens Inc. v FCC*, 401 F.2d 398 (D.C. Cir.1968)........................................27

*Rogers Radio Communications Services, Inc. v. FCC* 593 F.2d 1225 (D.C. Cir. 1978) ....................................................................................28

*Transactive Corp. v. United States*, 91 F. 3d 232 (D.C. Cir. 1996). ....................16

*Verizon Tel. Cos. v.. FCC*, 570 F.3d 294 (D.C. Cir. 2009) .............................. 15, 16

*Washington Assoc. for Tele. & Children v. FCC*, 712 F.2d 677 (D.C. Cir. 1983)..28

**Statutes**

28 U.S.C. §2342(1) ..........................................................................1

47 U.S.C. § 309 ..............................................................................1

47 U.S.C. § 319 ..............................................................................29

47 U.S.C. § 402 ......................................................................... 1, 2, 8

*Authorities upon which we chiefly rely are marked with an asterisk.

5 U.S.C.S. § 706...................................................................................... 15, 2, 3

Title VI of the Middle Class Tax Relief and Job Creation Act, Pub. L. No. 112-96,
126 Stat. 156 (2012 ......................................................................... x, 1, 9

**Rules**

*47 C.F.R. § 73.1015 ................................................................................. 33, 2, 13

*47 C.F.R. § 73.3522 ................................................................................. 32, 2, 13

*47 C.F.R. § 73.3564 ............................................................................ 18, 32, 2, 19

47 C.F.R. § 73.3598…………………………………………..……...23, 29, 30, 31, 36


**Other Authorities**

Amendment to FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed May
28, 2015). (JA ___) ................................................................. 7, 10, 19

*Application for Review* filed by Walker Broadcasting Company, Inc.,
https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?fa
cilityId=72623, (Sept. 30, 2015) (JA ___)............................... 4, 5, 6, 7, 11, 12, 13

*Application Procedures for Broadcast Incentive Auction Scheduled to Begin on
March 29, 2016; Technical Formulas for Competitive Bidding*, DA 15 − 1183,
80 Fed. Reg. 66429 (rel. Oct. 15 2015; published on Oct 29, 2015) (to be
codified at 47 C.F.R. pts. 1, 20,27, and 73) ................................................... ix, 12

*BLCDT20090622AFO, Fac. ID 83181, https://licensing.fcc.gov/cgi-
bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101481616&
formid=2&fac_num=83181....................................................... 17, 18, 26, 27, 30

*Eagle Broad. Group, Ltd. v. FCC*, 563 F.3d 543 (D.C. Cir. 2009) ........................34

*Expanding the Economic and Innovation Opportunities of Spectrum Through
Incentive Auctions*, GN Docket No. 12-268, Report and Order, 29 FCC Rcd.
6567 (2014)................................................viii, 9, 10, 13, 20, 21, 37, 38, 39, 41, 43

*Fatima Resp., Inc.*, 22 FCC Rcd. 8402 (2007) ........................................................34

*Great Scott Broad.*, 22 FCC Rcd. 4795 (2007) ......................................................34

Greenhill Report, http://wireless.fcc.gov/incentiveauctions/learn-program/docs/ia-opportunities-book.pdf, https://apps.fcc.gov/edocs_public/attachmatch/DOC-331911A2.pdf ........................................................................ 3, 6, 19, 24, 36, 41

*In re KXFT(FM),* 24 FCC Rcd 13483  (Oct. 30, 2009) .............................. 18, 29, 30

*In re Matter of 1998 Biennial Regulatory Review - Streamlining of Mass Media Applications, Rules, and Processes; Policies and Rules Regarding Minority and Female Ownership of Mass Media Facilities*, 14 FCC Rcd 17525 at n.38 (1999) .....................................................................................................................26

*In re WRKH(FM),* 23 FCC Rcd 4526, 2008 FCC LEXIS 2291 (Mar. 18, 2008) . 18, 30

*In the Matter of Clear Channel Broadcasting Licenses, Inc.*, 26 FCC RCD 7153, (Rel. May 6, 2011) ...............................................................................................30

*\*In the Matter of Tango Radio, LLC*, 30 FCC Rcd 10564, 2015 FCC LEXIS 2640, FCC 15-128 (2015) ................................................................................ 18, 32, 34

*In the Matter of Walker Broadcasting Company, Inc. Application for License to Cover Construction Permit, Application for Construction Permit and Petition for Eligible Status and Entity Status and Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding,* FCC 16-30, File Nos. BLCDT-20090402AOD and BPCDT-20080319ADH; AU Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269, Memorandum Opinion and Order,  (rel. Mar. 18, 2016), 31 FCC Rcd. 2395 (2016) (JA ___).... i, ii, viii, 1, 5, 9, 12, 13, 21, 22, 23, 26, 27, 28, 29, 33, 34, 35, 36, 38, 39, 41, 43, 17

*Incentive Auction Task Force Releases Revised Baseline Data and Prices for Reverse Auction; Announces Revised Filing Window Dates* DA-15-1296, 30 FCC Rcd. 12559 (rel. November 12, 2015). ......................................................12

*Media Bureau Announces Incentive Auction Eligible Facilities and July 9, 2015 Deadline for Filing Preauction Technical Certification Form,* Public Notice, 30 FCC Rcd. 6153 (rel. June 9, 2015) ............................................................. viii, 11

*\*Media Bureau Designates May 29, 2015 as Pre-Auction Licensing Deadline*, Public Notice, 30 FCC Rcd. 393 (MB Jan. 28, 2015) ................................... 10, 37

*Petition for Eligible Entity Status for WFTB(DT), Bath, NY* filed by Walker
   Broadcasting Company, Inc., File No. BLCDT-20090402AOD,
   https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?fa
   cilityId=72623 (June 12, 2015) (JA ___). .................................. 11, 14, 24, 41, 43

*Petition for Reconsideration* filed by Walker Broadcasting Company, Inc. AU
   Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269 (Nov. 30,
   2015) (JA ___). ...................................................................................... 12, 13, 14

Report No. A–131 .........................................................................................4

*Rita A. Capobianchi*, 6 FCC Rcd. 4631, 4631 (1991) ..............................................34

*See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA
   ___) ................................................................................... viii, 5, 12, 23

*Sonoma Charter Sch.*, 21 FCC Rcd. 9438, 9439 (2006) .........................................34

*\*WFTV-TV Holdings, Inc.*, 18 FCC Rcd. 20056 (2003) ............... 17, 18, 25, 27, 30

*WRFN-LP*, 24 FCC Rcd 12426, 2009 FCC LEXIS 5236 (Oct. 7, 2009 ......... 18, 29

viii

## **GLOSSARY**

| | |
|---|---|
| Eligibility Public Notice | *Media Bureau Announces Incentive Auction Eligible Facilities and July 9, 2015 Deadline for Filing Preauction Technical Certification Form,* Public Notice, 30 FCC Rcd. 6153 (rel. June 9, 2015) |
| FCC or Commission | Federal Communications Commission |
| *Incentive Auction R&O* | *Expanding the Economic and Innovation Opportunities of Spectrum Through Incentive Auctions*, GN Docket No. 12-268, Report and Order, 29 FCC Rcd. 6567 (2014). |
| *Letter Decision* | Letter from Barbara A. Kreisman, Chief, Video Division, Media Bureau to Walker Broadcasting Company, Inc. (Aug. 31, 2015), https://enterpriseefiling.fcc.gov/da taentry/public/tv/publicFacilityDetails.html?facilityID= 72623 (JA ___). |
| License Application | *See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA ___). |
| *Order* | *In the Matter of Walker Broadcasting Company, Inc. Application for License to Cover Construction Permit, Application for Construction Permit and Petition for Eligible Status and Entity Status and Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding,* FCC 16-30, File Nos. BLCDT-20090402AOD and BPCDT-20080319ADH; AU Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269, Memorandum Opinion and Order,  (rel. Mar. 18, 2016), 31 FCC Rcd. 2395 (2016)(JA ___). |
| *Procedures Order* | *Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical* |

ix

*Formulas for Competitive Bidding*, DA 15 – 1183, 80 Fed. Reg. 66429 (rel. Oct. 15 2015; published on Oct 29, 2015) (to be codified at 47 C.F.R. pts. 1, 20,27, and 73).

Spectrum Act        Title VI of the Middle Class Tax Relief and Job Creation Act, Pub. L. No. 112-96, 126 Stat. 156 (2012).

Station or WFBT     WFBT(DT) in Bath, New York

Walker              Walker Broadcasting Company, Inc.

## STATEMENT OF JURISDICTION

The Federal Communications Commission (hereinafter "FCC" or "Commission") has subject matter jurisdiction over the licensing of broadcast stations and determining eligibility in the Incentive Auction.[1] This Court has jurisdiction over appeals of final orders of the Commission pursuant to 28 U.S.C. §2342(1) and 47 U.S.C. § 402. The Commission released its final order in this case on March 18, 2016 which disposed of Walker Broadcasting Company, Inc.'s (hereinafter "Walker") claims relating to its License Application and its participation in the Incentive Auction: *In the Matter of Walker Broadcasting Company, Inc. Application for License to Cover Construction Permit, Application for Construction Permit and Petition for Eligible Status and Entity Status and Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding,* FCC 16-30, File Nos. BLCDT-20090402AOD and BPCDT-20080319ADH; AU Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269, Memorandum Opinion and Order,  (rel. Mar. 18, 2016), 31 FCC Rcd. 2395 (2016), (hereinafter "*Order*"). Public Notice of the *Order* was given on March 21, 2016. Appellant timely filed its appeal on April 15, 2016 pursuant to 47 U.S.C. § 402(c).

---

[1] See 47 U.S.C. § 309; Title VI of the Middle Class Tax Relief and Job Creation Act, Pub. L. No. 112-96, 126 Stat. 156 (2012) (hereinafter "Spectrum Act").

1

## STATEMENT OF THE ISSUES

(1)   Whether the Commission acted arbitrarily and capriciously by dismissing Walker's License Application for a new television station on channel 14 in Bath, New York and finding its construction permit expired for failure to timely file an Interference Study when in at least two other cases involving late filed interference studies, the license applications were granted and the construction permits were not deemed expired.

(2) Whether the Commission acted arbitrarily and capriciously by failing to follow its own rules and procedures by not providing written notice of needed corrective action before dismissal of the Walker License Application and expiration of its construction permit.

(3)  Whether the Commission acted arbitrarily and capriciously by failing to follow its policy of disfavoring dismissal of applications where that would result in denial of service.

(4) Whether the Commission acted arbitrarily and capriciously in dismissing the License Application and holding the construction permit to be expired where during the six years after the construction permit's expiration, the Commission treated the permit as viable by assessing and receiving payment for annual regulatory fees on the construction permit, accepting the amendment filed by

2

Walker, including Walker in the Greenhill Report, and interacting with Walker through the Commission staff.

(5) Whether the Commission acted arbitrarily and capriciously by not favorably considering the equities for granting the Walker License Application.

(6) Whether the Commission acted arbitrarily and capriciously in refusing to grant Walker eligibility status in the Incentive Auction.

(7) Whether the FCC subjected Walker to disparate treatment as compared with similarly situated entities or otherwise took action contrary to law.

3

## STATUTES AND REGULATIONS

Pertinent statutes and regulations have been reproduced in the Addendum.

## STATEMENT OF THE CASE

### License Application Background

On March 31, 1987, Walker filed its application for a new television station on analog channel 14 WFBT(DT) in Bath, New York (hereinafter "Station").[2] Seventeen years later, on April 23, 2004, the Commission granted the construction permit.[3] The construction permit was then tolled for an additional two years pending Commission action on a challenge to the construction permit by Paxson Syracuse License, LLC. The matter was still pending and unresolved when Paxson voluntarily dismissed its challenge on February 24, 2006.

---

2 *See* Exhibit 2 to the *Application for Review* filed by Walker Broadcasting Company, Inc., https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?facilityId=72623, (Sept. 30, 2015) (JA ___) (listing March 31, 1987, as the date of filing on the FCC Form 301).

[3]*See* Exhibit 3 to the *Application for Review* (JA ___)(listing April 23, 2004 as the grant date). The application was accepted for filing and placed on a cut-off list on June 25, 1987. *See* Report No. A–131. The great length of time it took to process and grant the application was particularly unusual because the application was a singleton application and there were no mutually exclusive-applications to consider.

4

Walker timely constructed the station and, on April 2, 2009, filed a license application to cover its digital construction permit (hereinafter "License Application").[4] The License Application as filed was complete with the exception of a land mobile interference study ("Interference Study").[5]

In response to the Commission's inquiries regarding the Interference Study, counsel emailed Commission staff on July 27, 2010 providing information on land mobile interference expecting further guidance.[6] There was no response. Having heard nothing, counsel emailed Commission staff a second time, on August 30,

---

[4] *See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA ___).

[5] The Commission claims that Walker "had not submitted a request for program test authority or the documentation required by the LMR condition." *Order* at ¶4; (JA___). The documentation relating to the LMR condition (or the Interference Study) was not submitted at the time the License Application was filed. However, Walker did request program test authority. *See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA ___).

[6] *See* Exhibit 4 to the *Application for Review* (JA ___). The July 27, 2010 email contained information relevant to the land mobile interference issue. This email bounced. The same email was resent the same day with the attachments divided in two separate emails. This email was received. The emails submitted earlier-filed engineering data that demonstrated there would be no land mobile interference at the originally authorized 50 kw power level at 318 meters. Also included was earlier-filed engineering data detailing the parameters of the currently authorized operation at greatly reduced power of .676kW at a HAAT of 196 meters. Thus, the emails demonstrated that operation on channel 14 would not result in interference to mobile two-way users. The need for another study was, hopefully, unnecessary given the fact that WFBT was proposing to operate at 28% less power than originally authorized.

2010, soliciting a response.[7] On September 21, 2010, counsel re-sent the same

information contained in the July 27, 2010 email.[8] No response was ever received

to the information provided in the emails. All the emails were properly transferred

to the Commission as verified by server records.[9]

From the time Walker filed its License Application in 2009 until the time its

License Application was dismissed in 2015, Walker was assessed and paid

significant annual regulatory fees on its outstanding construction permit.[10] Walker

was also listed as an eligible station to participate in the Incentive Auction in the

2015 Greenhill Report.[11]

On August 31, 2015, the Commission issued a letter decision dismissing the

License Application (hereinafter "*Letter Decision*").[12]  The Commission dismissed

---

[7]  *See* Exhibit 5 to the *Application for Review* (JA___).

[8]  *See* Exhibit 4 to the *Application for Review* (JA ____).  The attachments to these emails are not attached but are the same as those attached to the July 27, 2010 email.

[9] See Exhibits 4 and 5 to the *Application for Review* (JA ____). Any failed delivery would have been noted by the server.

[10] Walker paid the following annual regulatory fees, which total $24,975: 2009, $1950 (FCC voucher number E001662810); 2010, $3050(FCC voucher number E001837069); 2011, $3275 (FCC voucher number E002006094); 2012, $3425 (FCC voucher number E002193532; 2013, $3675 (FCC voucher number (E002392347); 2014; $4750; 2015,  $4850 (FCC voucher number E002732719)

[11] *See* Greenhill Report, http://wireless.fcc.gov/incentiveauctions/learn-program/docs/ia-opportunities-book.pdf, https://apps.fcc.gov/edocs_public/attachmatch/DOC-331911A2.pdf

[12] Letter from Barbara A. Kreisman, Chief, Video Division, Media Bureau to Walker Broadcasting Company, Inc. at 3-4 (Aug. 31, 2015),

the License Application concluding that (1) the License Application was patently defective (2) Walker failed to comply with a staff request, and (3) that the construction permit expired and was automatically forfeited as of April 3, 2009, for failure to include the Interference Study with the License Application.[13]   The Commission also denied Walker's request to be designated as an eligible facility in the Incentive Auction.[14]

Walker filed an Application for Review of the Commission's *Letter Decision* on September 30, 2015.[15] Walker argued that the Station was timely constructed and a license to cover the construction permit was timely filed.[16] Walker noted that an amendment with the Interference Study was timely filed in response to the Commission's preauction licensing public notice deadline and that the amendment had been accepted.[17] Walker demonstrated that the absence of the Interference Study at the time the License Application was filed was not a  patent

---

https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?facilityId=72623 (JA ___).

[13] *Id.*

[14] *Id.* at 4-6 (JA ___).

[15] *Application for Review* filed by Walker Broadcasting Company, Inc., https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?facilityId=72623, (Sept. 30, 2015)(JA ___).

[16] *Id.* at 6-12 (JA ___).

[17] *Id.* at 6 (JA ___). *See* Amendment to FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed May 28, 2015) (JA ___).

7

defect of the License Application. [18] The Commission's action was inconsistent with prior precedent where the Commission routinely found the construction permits were not forfeited and granted incomplete license applications—precedent which included at least two other instances where Interference Studies for channel 14 stations were filed years after the license application was filed.[19] The precedent cited by Walker included license applications that were granted in situations like Walker's, where information requested in a construction permit was not provided until after the expiration of the construction permit. There was no automatic forfeiture and the Commission implicitly waived the rule. Walker further argued that the License Application was letter perfect at the time the Commission dismissed the License Application[20] and that it complied with the Commission's request for additional information by filing the Interference Amendment.[21]

Furthermore, Walker argued as a matter of equity that the License Application should be granted since it was not dismissed and the construction permit was not cancelled or treated as cancelled for over six years, during which time Walker was assessed and paid significant annual regulatory fees to the

---

[18] *Id.* at 6-9 (JA ___).
[19] *Id.* (JA ___).
[20] *Id.* (JA ___).
[21] *Id.* 9-12 (JA ___).

8

Commission as well as incurring other ongoing expenses.[22] During this period, the

Interference Amendment was also accepted for filing.

**Incentive Auction Background**

The Spectrum Act authorized the FCC to hold an Incentive Auction to

encourage broadcasters to relinquish their spectrum rights in exchange for

incentive payments.[23] Broadcasters who declined to give up their spectrum rights

in the reverse auction were to be part of a repacking process under which those

stations would be reassigned to new channels in a different band of spectrum.[24]

Participation in the reverse auction is voluntary and began on March 29, 2016.

Stations without repacking protection are subject to displacement, meaning a

licensee must bear the cost of moving to a new channel, channel share, or stop

operating altogether. The final phase of the auction, or the forward auction,

involves an auction of recovered spectrum to wireless carriers.[25] The FCC

described this as a "*once-in-a-lifetime*" opportunity for broadcasters.[26]

In its *Incentive Auction R&O* the Commission determined that the Spectrum

Act allowed the Commission to extend protection to some additional facilities that

---

[22] *Id.* at 12-13 (JA ___).

[23] *See Spectrum Act.*

[24] *See Nat'l Ass'n of Broadcasters v FCC*, 789 F.3d 165, 170 (D.C. Cir. 2015).

[25] *Id*. at 170

[26] *See Expanding the Economic and Innovation Opportunities of Spectrum Through Incentive Auctions*, GN Docket No. 12-268, Report and Order, 29 FCC Rcd. 6567 at ¶1, 3 (2014) (hereinafter "*Incentive Auction R&O*")(emphasis added).

9

were not licensed. The Commission determined, ". . . [T]hat the public interest is best served by extending protection to certain categories of facilities that were not licensed or the subject of a pending license to cover application as of February 22, 2012. More specifically, we will protect: (1) the small number of new full power television stations that were authorized, but not constructed or licensed as of February 22, 2012. . .".[27] The Commission went on to note, "We also generally will limit our discretionary protection to facilities in the preceding categories that are licensed by the preauction licensing deadline to be announced by the Media Bureau."[28]

On January 28, 2015, the Commission issued a Public Notice establishing May 29, 2015 as the preauction licensing deadline--the deadline for filing all amendments to pending license applications.[29] In response, Walker timely filed an amendment by that deadline to its License Application on May 28, 2015 that included an Interference Study. [30]

---

[27] *Incentive Auction R&O* at ¶ 194.

[28] *Id.* at ¶195 (The references to" licensed" facilities refers to both licensed facilities and those subject to a pending license to cover application. *See Id.* at fn. 645).

[29] *See Media Bureau Designates May 29, 2015 as Pre-Auction Licensing Deadline*, Public Notice, 30 FCC Rcd. 393 (MB Jan. 28, 2015).

[30] *See* Amendment to FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed May 28, 2015) (JA ___).

On June 9, 2015 the Bureau issued a Public Notice, listing each station facility eligible for protection in the repacking process and for relinquishment in the Incentive Auction.[31]  Surprisingly and contrary to the FCC's express statements on inclusion of stations like Walker's, Walker was not on the list of eligible stations.  Walker promptly filed a Petition for Eligible Entity Status requesting that the Station be deemed an eligible facility for purposes of the Incentive Auction.[32] The *Letter Decision* from the Commission denied the request on the grounds that Walker was not an eligible licensee and on the alternative grounds that its request for eligibility was effectively a late filed petition for reconsideration.[33]

Walker argued in its Application for Review that it met the criteria for qualification to be included in the Incentive Auction.[34] It had a pending license application on file as of April 2, 2009, well before the February 22, 2012 cut-off

---

[31] *Media Bureau Announces Incentive Auction Eligible Facilities and July 9, 2015 Deadline for Filing Preauction Technical Certification Form,* Public Notice, 30 FCC Rcd. 6153 (rel. June 9, 2015) (hereinafter "Eligibility Public Notice").
[32] *Petition for Eligible Entity Status for WFTB(DT), Bath, NY* filed by Walker Broadcasting Company, Inc., File No. BLCDT-20090402AOD, https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?facilityId=72623 (June 12, 2015) (JA ___).
[33] Letter from Barbara A. Kreisman, Chief, Video Division, Media Bureau to Walker Broadcasting Company, Inc. at 4-6 (Aug. 31, 2015), https://enterpriseefiling.fcc.gov/dataentry/public/tv/publicFacilityDetails.html?facilityId=72623 (JA ___).
[34] *Application for Review* at 14-15  (JA ___).

11

date.[35] The License Application covered a construction permit issued before February 22, 2012 and all amendments were filed before the May 29, 2015 deadline.

On October 15, 2015, subsequent to Walker's Application for Review, the Commission issued its *Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding* DA 15 – 1183 (released October 15 2015) (hereinafter "*Procedures Order*"). [36] On November 30, 2015 Walker filed a Petition for Reconsideration.[37] Walker sought reconsideration of the *Procedures Order* demonstrating that it met the criteria for inclusion in the Incentive Auction and that, as a separate matter,

---

[35] *See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA ___)

[36] *Application Procedures for Broadcast Incentive Auction Scheduled to Begin on March 29, 2016; Technical Formulas for Competitive Bidding*, DA 15 – 1183, 80 Fed. Reg. 66429 (rel. Oct. 15 2015; published on Oct 29, 2015) (to be codified at 47 C.F.R. pts. 1, 20,27, and 73). The Commission modified the *Procedures Order* by a subsequently released, *Incentive Auction Task Force Releases Revised Baseline Data and Prices for Reverse Auction; Announces Revised Filing Window Dates* DA-15-1296, 30 FCC Rcd. 12559 (rel. November 12, 2015).

[37] *Petition for Reconsideration* filed by Walker Broadcasting Company, Inc. AU Docket No. 14-252; GN Docket No. 12-268; WT Docket No. 12-269 (Nov. 30, 2015) (JA ___).

Walker should at minimum be included in the Incentive Auction subject to the ultimate outcome of its license validity proceeding.[38]

The *Incentive Auction R&O* also specifically provides that parties with licensing issues that are challenged or subject to review are to be included in the auction pending the outcome.[39] Walker as a party with a timely filed license application which has been denied and is on appeal is the type entity that is intended to be included.

**The Commission's *Order* denying the Application for Review and Petition for Reconsideration**

The Commission's *Order* denied Walker's Application for Review.[40] The Commission held that the construction permit was automatically forfeited for failure to submit the Interference Study at the time the License Application was filed, and concluded that the License Application was properly dismissed because the construction permit had expired automatically for lack of the Interference

---

[38] The Commission specifically stated: "The Commission determined that eligible broadcast licensees . . . as well as eligible broadcast licensees of facilities subject to a nonfinal license validity proceeding . . . may participate in the reverse auction subject to any incentive payment being held until the pending proceedings are finally resolved." *See Procedures Order*, 80 Fed. Reg. 66429 at¶ 44 (Oct. 29, 2015).

[39] *See generally, Incentive Auction R&O* at ¶ 354, et seq. (2014).

[40] *See generally, Order* (JA ___).

13

Study.[41] The Commission denied Walker's Petition for Eligible Entity Status in the Incentive Auction on the grounds that (1) Walker's construction permit had expired, (2) that the discretionary protection to participate was only intended to apply to four specific stations, (3) that Walker was not similarly situated to the four specific stations, and (4) that protecting Walker's facility would significantly impact the Commission's repacking flexibility.[42]

The Commission also denied Walker's Petition for Reconsideration.[43] The Commission held that Walker was not a licensee entitled to participation in the Incentive Auction pending the outcome of the ultimate disposition of its license.

## STANDARD OF REVIEW

A court follows the two-part *Chevron* test when reviewing an agency's interpretation of the statutes it administers.[44] "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[45]  However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is

---

[41] *Order* at ¶10-12 (JA ___).
[42] *Id.* at ¶13-16 (JA ___).
[43] *Id.* at ¶17-18 (JA ___).
[44] *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837 (1984).
[45] *Id.* at 842-43.

14

whether the agency's answer is based on a permissible construction of the statute."[46]

The Administrative Procedure Act provides that the "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[47]  The Court is

> "not to substitute its judgment for that of the agency….Normally, an agency rule would be arbitrary and capricious if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise."[48]

Additionally, when an agency acts contrary to its precedent, it is acting in a manner that is arbitrary and capricious.[49]

---

[46] *Id.* at 843.
[47] 5 U.S.C.S. § 706(2)(A).
[48] *AT&T Corp. v. FCC*, 236 F.3d 729, 734 (D.C. Cir. 2001) *citing Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983)**.**
[49] *Verizon Tel. Cos. v.. FCC*, 570 F.3d 294, 304-05 (D.C. Cir. 2009).

"…[I]t is not reasonable for the Commission to announce such a policy without providing a satisfactory explanation for embarking on this course when it has not followed such policy in the past."[50] "The FCC 'cannot silently depart from previous policies or ignore precedent" as it has done here.'"[51] "[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute."[52] An agency also acts arbitrarily when it treats similar situations differently.[53]

## SUMMARY OF THE ARGUMENT

Walker has been injured by the Commission's arbitrary and capricious dismissal of Walker's License Application and expiration of its construction permit and failure to find Walker to be an eligible entity in the Incentive Auction. The Walker License Application should have been granted. The application provided all of the required information, including all legal and engineering data, with the

---

[50] *AT&T Corp. v. FCC*, 236 F.3d 729, 736 (D.C. Cir. 2001); *Verizon Tel. Cos.* at 304-05.

[51] *Id.* citing *Greater Boston Television Corp. v. FCC*, 444 F.2d 841,852 (D.C. Cir. 1970).

[52] *Greater Boston Television Corp. v. FCC*, 444 F.2d 841,852 (D.C. Cir. 1970).

[53] *Melody Music v. FCC*, 345 F.2d 730 (D.C. Cir. 1965)(holding that the FCC needed to articulate its rationale for disparate treatment of similarly situated parties); *Transactive Corp. v. United States*, 91 F. 3d 232, 237 (D.C. Cir. 1996).

16

exception of the Interference Study.[54]  The Commission concluded that the absence of this one piece of information rendered the License Application incomplete and it was therefore properly dismissed and the construction permit forfeited.  Failure to include an interference study is not a basis for dismissal of the license or forfeiture of the construction permit as confirmed by an examination of precedent, and as a matter of equity.

Walker is aware of no case where a television broadcast license application has been denied and a construction permit deemed forfeited for failure to timely provide an interference study. On the contrary, every known instance where a mobile interference study has been filed late has resulted in grant of the pending license application. Hence the Commission's treatment of Walker is arbitrary and capricious.[55]

The Commission's action is also arbitrary and capricious for failure to follow its own procedures and rules by not first requesting in writing that Walker provide the Interference Study before canceling the Construction permit. Section 73.3564, a rule applicable to all broadcast services including television, states that

---

[54]  The standard FCC Form 302-DTV does not as a matter of course require the submission of an interference study.

[55] *See, WFTV-TV Holdings, Inc.*, 18 FCC Rcd. 20056 (2003); BLCDT20090622AFO, Fac. ID 83181, https://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101481616&formid=2&fac_num=83181.

"[i]n the case of minor defects as to completeness, a *deficiency letter* will be issued and the applicant will be required to supply the missing or corrective information."[56] The Commission did not do so in this case.

The Commission acted arbitrarily by failing to consider its own precedent which disfavors automatic expiration of a construction permit[57]. The Commission routinely overlooks automatic forfeiture of construction permits where an application, even a late filed application, is on file and physical construction is complete.[58] The License Application was on file and the station was constructed. The Commission's holding is contrary to its policy to disfavor automatic expiration except for egregious situations.[59] Prior precedent demonstrates Walker's circumstances were not egregious and certainly not enough to warrant dismissal.[60]

The Commission, contrary to its position now, considered the construction permit to be valid and very much alive. It implicitly waived the automatic

---

[56] 47 C.F.R. § 73.3564 (emphasis added).  This provision is applicable to applications to cover construction permits. *Tango Radio, LLC*, 27 FCC Rcd. 14836, 14837 (MB 2012), aff'd, *In the Matter of Tango Radio, LLC*, 30 FCC Rcd 10564, 2015 FCC LEXIS 2640, FCC 15-128 (2015).

[57] *In re KXFT(FM)*, 24 FCC Rcd 13483, 13485 (Oct. 30, 2009).
[58] *Id.*; *WRFN-LP*, 24 FCC Rcd 12426, 2009 FCC LEXIS 5236 (Oct. 7, 2009; *In re WRKH(FM)*, 23 FCC Rcd 4526, 2008 FCC LEXIS 2291 (Mar. 18, 2008).
[59] *In re KXFT(FM)* at 13485.
[60] *See*, *WFTV-TV Holdings, Inc.*; BLCDT20090622AFO Fac. ID 83181, https://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101481616&formid=2&fac_num=83181.

18

forfeiture of the construction permit. It annually invoiced Walker significant annual regulatory fees on its construction permit for seven years.[61] Walker paid the regulatory fees which totaled $24,975 over the years.[62] The Commission also accepted the Interference Amendment filed by Walker and even accepted and granted as recently as 2015 a minor change in ownership application.[63]   It also included Walker in the Greenhill Report of auction eligible stations.[64]

What is more, the Commission dismissed the License Application after it was letter perfect. Instead of dismissing the Walker License Application back in 2009 when it claims the construction permit was automatically expired, the Commission waited until after the amendment was filed with the Interference Study to dismiss License Application. The Commission cites no precedent to support dismissal of a license application complete in all respects but for an absent interference study and which was letter perfect when dismissed.

Even assuming that the License Application was fatally defective when filed (which it was not based on precedent), it took the Commission six years to make

---

[61] *See* fn. 10.

[62] *Id.*

[63] *See* Amendment to FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed May 28, 2015)(JA ___); *See* BAPCDT 20150507ABC 316 E DWFBT 72623 DT GRANTED 5/20/2015 at https://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101648114&formid=316&fac_num=72623 (JA___).

[64] *See* fn. 11.

19

that determination.  The claim that it was Walker's failure to act that warrants dismissal rings hollow in light of the history of significant Commission delay.[65]  In the meantime, Walker continued to pay annual regulatory fees and incur other expenses, including but not limited to other expenses relating to the Station. Accordingly, not only as a matter of policy, but also as a matter of equity, the License Application should be reinstated and granted. The public is best served by granting a license to a Station that is ready to go on the air rather than by forever denying the public access to a new television station.

The Commission's *Incentive Auction R&O* makes clear that Walker *is* among the stations to be included in the Incentive Auction.[66] The *Incentive Auction R&O* specifically states, "we will exercise our discretion to protect the new full power television stations that were authorized by construction permits, but not yet licensed as of February 22, 2012."[67]. The *Incentive Auction R&O* further states,"… based on careful consideration of these factors, we conclude that the public interest is best served by extending protection to certain *categories of facilities* that were

---

[65] Any assertion that Walker is responsible for undue delay is dwarfed by the seventeen years it took the Commission to process an uncontested singleton application. The Commission processes applications, not Walker. Walker is not responsible for the pace of the processing or the time it has taken the Commission to act on this application.

[66] *See Incentive Auction R&O*  (JA ___).

[67] *Id.* at ¶ 196.

20

not licensed or the subject of a pending license to cover application as of February 22, 2012. More specifically, we will protect: (1) The small number of new full power stations that were authorized but not constructed or licensed as of February 22, 2012;…."[68]

The Commission attempts to limit the broad scope of this language by claiming, the *Incentive Auction R&O* language applies to only four stations: WACP, Atlantic City, NJ; WMWC, Galesburg, IL; KUKL-TV Kalispell, MT; and WMDE, Seaford, DE. The *Incentive Auction R&O identified* four stations subject to inclusion, but did not *limit* inclusion in the auction to those four stations.[69]  It describes a "category" of stations that includes Walker.

## STATEMENT OF STANDING

To prove appellant has standing, an appellant must show that (1) "it has suffered an 'injury in fact'" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[70] Walker has standing because the *Order* directly caused concrete and actual injury by affirming

---

[68] *Id.* at ¶ 194 (emphasis added).
[69] *Id.* at fn. 647.
[70] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(internal citations omitted).

the dismissal of the License Application and affirming Walker's exclusion from the Incentive Auction.  This injury will be redressed by a favorable decision of this Court, including vacating the FCC's *Order* and grant of the Walker License Application and/or directing the FCC to include Walker in the repacking phase of the Incentive Auction as well as other equitable relief.

Walker has standing because it participated in the proceedings that led to the *Order* and has a statutory right to appeal under 47 U.S.C. 402.[71]

## **ARGUMENT**

The Walker License Application should have been granted. Instead, the Commission took the drastic measure of dismissing the License Application and canceling the underlying construction permit – casting all blame on Walker.[72]  The Commission's treatment of Walker is entirely at odds with how it processes license applications and treats the underlying construction permits. The Commission's primary motive for deviating from its own procedures is to justify the Commission's exclusion of Walker's Station from participation in the upcoming Incentive Auction.  This was made evident when the Commission noted, ". . .

---

[71] *See American Trucking Ass'ns, Inc. v. Federal Motor Carrier Safety Admin*, 724 F.3d 243, 246 (D.C. Cir. 2013).

[72] *Order* at ¶ 12 (JA ___) (holding that Walker is responsible for the delay when it's the Commission's lengthy delays in this proceeding that are staggering. It took the Commission seventeen years to grant the construction permit.)

22

[P]rotecting Walker's facility would be likely to significantly impact of repacking flexibility in the area where it is located."[73]

## I.   The Commission's Treatment of Walker Is Arbitrary and Capricious.

The Station was timely constructed by the deadline established on the Construction Permit. The License Application, which was timely filed, provided all of the required information, including all legal and engineering data, with the exception of the Interference Study.[74] Over six years later after annually invoicing Walker and annually receiving significant regulatory fees from Walker for its construction permit, and after an amendment providing the Interference Study was filed and accepted, the Commission concluded that the absence of this one piece of information rendered the underlying construction permit forfeited as of April 3, 2009.  It further concluded that the License Application was, therefore, properly dismissed.[75] The Commission only took action dismissing the License Application

---

[73] *Order* at ¶ 16 (JA ___).

[74]  *See* FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed Apr. 2, 2009)(JA ___).The standard FCC Form 302-DTV does not as a matter of course require the submission of an interference study. The Interference Study was filed by amendment and was on file and part of the application at the time the Commission dismissed the license application.

[75] *See Order* at ¶ 10-12(JA ___).The Commission concluded the construction permit was automatically forfeited under Section 319(b) on the grounds the Station was not ready for operation within the time specified and based on rule 73.3598(e) providing that a construction permit is automatically forfeited where construction has not been completed and an application for license timely filed.

23

on the grounds the construction permit was forfeited after Walker filed its Petition for Eligible Entity Status. Prior to that time the Commission treated the construction permit as very much alive. The Commission, however, had no desire to include Walker in the Incentive Auction.

Because the Commission's desired end result was to exclude Walker, it treated Walker disparately and, thus, acted in a manner that is arbitrary and capricious. It has acted contrary to precedent and has treated Walker differently than other similarly situated channel 14 license applicants. The Commission's after-the-fact conclusion that the construction permit automatically expired is at odds with its own actions. The Commission collected regulatory fees on the "expired" Walker construction permit for years.[76] It orally requested a copy of the Interference Study post-filing. It included channel 14 in the Greenhill Report.[77] Lastly, it accepted the Interference Study amendment.

### a. The Commission's Treatment of Walker Is Contrary to Precedent Granting Channel 14 License Applications with Late Filed Interference Studies.

In at least two other instances involving submission of late filed required channel 14 interference studies, the underlying construction permits were not canceled, and the licenses were granted. In a letter opinion involving WFTV-TV

---

[76] *See* fn. 10.
[77] *See* fn. 11.

Holdings, Inc., the licensee applied for a license for channel 14 WRDQ-DT in Orlando, Florida without filing a requested land mobile interference study.[78] The construction permit for WRDQ-DT contained a condition that the licensee submit a land mobile interference study and further prohibited broadcast operations until program test authority was granted. Not only did WRDQ-DT submit its license application without a land mobile interference study, it also began broadcasting without grant of program test authority. The Commission determined WRDQ-DT willfully violated the rules by operating the station without authority and issued a $10,000 fine. The Commission did not, however, dismiss the license application or cancel the underlying construction permit.  Instead, the application was "held in abeyance until unknown interference to land mobile stations [was] identified and remedied."[79]  The mobile interference study was ultimately filed two years after the license application was initially filed.

Likewise, the Commission found a license application acceptable for filing for channel 14 KOCW filed by Newport Television License, LLC ("Newport Television") which failed to include a mobile radio interference study. Newport Television filed its license application for channel 14 on June 22, 2009 without an interference study. It amended its application two and a half years later on January

---

[78] *WFTV-TV Holdings, Inc.,* 18 FCC Rcd. 20056 (2003).

[79] *Id.* at 20059.

3, 2012 to provide a land mobile study. The Commission granted the application on January 10, 2012.[80]

The Commission's treatment of WRDQ-DT and KOCW is inconsistent with the *Order* dismissing Walker's License Application. The WRDQ, KOCW, and WFBT construction permits required land mobile radio interference studies to be submitted along with the license application. All the applicants failed to supply the land mobile radio interference studies until years after the license applications were filed and construction permits expired. In stark contrast to this prior precedent, the Commission took the drastic action of dismissing Walker's WFBT license application and holding the underlying construction permit to be expired for failing to submit the Interference Study.[81]

---

[80]   *See* BLCDT20090622AFO  Fac ID 8318, https://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101481616&formid=2&fac_num=83181

[81] Similarly situated parties should not be treated differently. See *Melody Music* 345 F. 2d 730 (D.C Cir. 1965). This is especially true when the action involves the severe sanction of dismissal. "Although a broadcasting permit or license does not confer a property right on its holder, procedural due process rights inherent in the APA attach when the Commission changes the terms or conditions of a permit or license. For example, the dismissal of an application is a sufficiently grave sanction to trigger 'traditional concepts of due process incorporated into administrative law' that 'preclude an agency from penalizing a private party for violating a rule without first providing adequate notice of the rule.'" *In re Matter of 1998 Biennial Regulatory Review - Streamlining of Mass Media Applications, Rules, and Processes; Policies and Rules Regarding Minority and Female Ownership of Mass Media Facilities*, 14 FCC Rcd 17525 at n.38 (1999) quoting

26

The Commission attempts to distinguish its treatment of WRDQ and KOCW by claiming they are factually distinguishable since both were providing analog service when the license applications were filed.[82] This is a factual distinction without meaning. All three filed license applications for digital channel 14 pursuant to construction permits for digital 14. The Commission's basis for dismissal of the Walker License Application was premised on the underlying forfeiture of the construction permit for failure to timely submit the Interference Study required in the construction permit. In both of the cited cases the interference studies were also required by the terms of the construction permits but were not filed until well after expiration of the construction permits.[83] There is no language in the construction permits or in the precedent cited by the Commission, which provides for disparate treatment for some construction permits and not others. The Commission's claim that the Walker construction permit was automatically forfeited for filing a late Interference Study is at odds with the fact

---

*Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1, 2 (D.C. Cir. 1987); *Radio Athens Inc. v FCC*, 401 F.2d 398, 404 (D.C. Cir.1968). See also *Radio Athens, Inc.* at 401 F.2d 398.

[82] *Order* at fn 43 (JA ___).

[83] The WRDQ construction permit expired November 1, 2002 and in the interference study was filed January 30, 2004. The KOCW construction permit expired on February 17, 2009 and the interference study was filed on December 30, 2011.

there was no automatic forfeiture of the WRDQ and KOCW construction permits.[84]

### b. The Commission's Treatment of Walker Is Contrary to Precedent That Disfavors Automatic Expiration.

The Commission's *Order* is inconsistent with precedent where automatic cancellation is disfavored and where the Commission has ignored or

---

[84] The Commission claims it dismisses the argument about Walker's disparate treatment vis-a-vis other like situated channel 14 license applications since the division has not had an opportunity to pass on the argument. The Commission has had the opportunity and, in fact, has passed on the argument. This Court has held that 47 U.S.C § 405 requires the appellant to give the "FCC a 'fair opportunity' to pass on a legal or factual argument." *Washington Assoc. for Tele. & Children v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983); *Rogers Radio Communications Services, Inc. v. FCC* 593 F.2d 1225, 1229 (D.C. Cir. 1978) (holding that one of the purposes of § 405 is to give the "Commission the initial opportunity to correct errors in its decision or the proceeding leading to the decision."). "On its face, [47 U.S.C. § 405], commands only that the *Commission* be afforded the opportunity to pass on issues. There is no requirement that this opportunity be afforded in any particular manner, or by any particular party." *Office of Communication of United Church of Christ v. FCC*, 465 F.2d 519, 523-24 (D.C. Cir. 1972) (emphasis added) (holding that when the majority's decision analyzed and interpreted the relevant statute and Commission precedent, the issue was "surely before the Commissioners at the time of their decision."); "…[D]isgruntled parties are not required to seek administrative reconsideration before challenging a Commission order in this court, and exceptions to this general rule are to be construed narrowly." *Nat'l Assoc. for Better Broadcasting v. FCC*, 80 F2d 270, 274 (D.C. Cir. 1987). The two exceptions are: "where the Commission has had *no* opportunity to pass on the factual or legal issued raised before the court, and where the challenge is predicated upon a technical defect….which could have easily been cured if called to the Commission's attention…" *Id.* (emphasis added).

waived on its own its rules dealing with forfeiture of construction permits. The Commission held Walker's construction permit to be automatically forfeited under Section 319(b) and 47 CFR § 73.3598(e).[85] Section 319(b) states that a construction permit "will be automatically forfeited if the station is not ready for operation within the time specified."[86] Section 73.3598(e) states, "[a]ny construction permit for which construction has not been completed and for which an application for license has not been filed, shall be automatically forfeited upon expiration without any further affirmative cancellation by the Commission."[87]

Automatic expiration of construction permits is not a hard and fast rule as implied by the Commission. The Commission routinely ignores the rule where license applications have been filed late after a deadline set by the construction permit, which would typically render the construction permit to be automatically expired.[88] This is especially true where cancellation of the construction permit

---

[85] *Order* at ¶ 10(JA ___).

[86] 47 U.S.C. § 319(b).

[87] 47 C.F.R. § 73.3598(e). Walker readily admits that an interference study was not filed with the License Application but disputes the Commission's claim that Walker does not contest automatic forfeiture of its construction permit. Every argument and case precedent supporting the Walker license grant also argues in support of and indeed requires the validity of the underlying construction permit.

[88] *See In re KXFT(FM)*, 24 FCC RCD 13483, 13485-86, 2009 FCC LEXIS 5576, (Oct. 30, 2009); *WRFN-LP*, 24 FCC Rcd 12426, 2009 FCC LEXIS 5236 (Oct. 7, 2009)(holding that the Commission's *sua sponte* waiver of rule 73.3598(e) for the six-week late filing of the license application was "consistent with precedent. Specifically, in several previous instances, the Media Bureau has granted license

29

would result in a permanent denial of a broadcast service to the public.[89]  In fact, the Commission has waived 73.3598(e) *sua sponte*, or without waiver requests from the permittees.[90]

In this case, the Station was (1) completely physically constructed and broadcast ready and (2) the License Application was timely filed.[91] The Commission accepted the later filed Interference Study filed by amendment. At the time the Commission acted on the License Application, there was nothing to keep the Commission from granting a license and program test authority and allowing for a new television service - except its desire to keep Walker out of the Incentive

applications filed after the permit date, provided that the permittee has demonstrated timely construction in accordance with the terms of the permit."); *In re WRKH(FM),* 23 FCC Rcd 4526, 2008 FCC LEXIS 2291 (Mar. 18, 2008)

[89] "Long-standing precedent establishes the unintended consequences of a Rule are a significant factor favoring a Rule waiver. Furthermore, automatic forfeiture of the authorization of an operating station is a severe penalty which the Commission has been reluctant to impose absent an egregious violation of its Rules. *In re. KXFT(FM)* at 13485.

[90] *In the Matter of Clear Channel Broadcasting Licenses, Inc.*, 26 FCC RCD 7153, (Rel. May 6, 2011) (staff practice to waive "relatively minor filing deadline violations, so long as applicant can demonstrate that construction was, in fact, completed in a timely manner.").

[91] The Commission claims that because the Interference Study was not provided before the expiration of the construction permit that construction was not complete. However, the Station was constructed and ready to operate as further confirmed by the Interference Study that was filed. The Commission, as noted earlier, had never before considered lack of an Interference Study to be incomplete construction of a broadcast station. *See, WFTV-TV Holdings, Inc.*, 18 FCC Rcd. 20056 (2003); BLCDT20090622AFO, Fac. ID 83181, https://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/forms/prod/cdbsmenu.hts?context=25&appn=101481616&formid=2&fac_num=83181.

Auction. The Commission waives late-filed application violations. It should not rely on 73.3598(e) as a hard and fast rule which requires automatic forfeiture of a construction permit, especially for a License Application that *was* timely filed and a Station that was broadcast ready.

### c. **The Commission's Treatment of Walker Is Contrary to Precedent and Past Procedure Where the Commission Issues Deficiency Letters.**

It is apparent that the Commission itself did not treat the construction permit as automatically expired or the License Application as dismissed. Instead of dismissing the License Application, staff made an informal, oral request for the Interference Study.[92]   If a failure to include an interference study renders a construction permit forfeited and a license application fatally flawed, it would be pointless to request additional information and continue to process the application.

At no point in this long application process did the Commission provide written notice to Walker of any deficiency in the License Application.  Section 73.3564, a rule applicable to all broadcast services including television, states that "[i]n the case of minor defects as to completeness, a *deficiency letter* will be issued

---

[92] Walker, through counsel, emailed Commission staff on three occasions to provide interference data and to obtain further guidance from the Commission. And, when the Commission released the Public Notice establishing a deadline for filing amendments to pending license applications, Walker complied and timely filed the Interference Study.

31

and the applicant will be required to supply the missing or corrective information."[93] No such deficiency letter was ever sent to Walker.[94]

In *Tango Radio, LLC*, multiple telephonic requests were made for supplemental information, yet the Commission did not dismiss the application until a written request was made specifying the information to be provided and a deadline to provide it.[95] The license application was dismissed only after the applicant's failure to respond to the written request.[96] Unlike Tango, Walker did

---

[93] 47 C.F.R. § 73.3564 (emphasis added).  This provision is applicable to applications to cover construction permits. *Tango Radio, LLC*, 27 FCC Rcd. 14836, 14837 (MB 2012), aff'd, *In the Matter of Tango Radio, LLC*, 2015 FCC LEXIS 2640, FCC 15-128 (2015).

[94] An application is substantially complete and will be accepted for filing if it is "in accordance with the Commission's core legal and technical requirements." 47 C.F.R. § 73.3564(a)(3).  The Commission's rules state that "[a]pplications found to meet minimum filing requirements, but that contain deficiencies in tender or in acceptance information, shall be given the opportunity for corrective amendment." *Id.* For broadcast services subject to competitive bidding, which includes television, an applicant that submits a substantially complete application with a defect, omission, or inconsistency will receive a "deficiency letter . . . affording the applicant the opportunity to correct the defect, omission or inconsistency." 47 C.F.R. § 73.3522(a)(2).  Such amendments may cure any defect, omission, or inconsistency identified by the Commission. *Id.*

[95] *Tango Radio, LLC*, 27 FCC Rcd. 14836 (MB 2012), aff'd, *In the Matter of Tango Radio, LLC*, 2015 FCC LEXIS 2640, FCC 15-128 (2015).

[96] In *Tango,* a party filed a license application for KANM that failed to include several items necessary to process the application. Staff orally requested the information, which was not provided. The application was not dismissed, however. Instead, the Commission requested the information by letter and established a deadline for receipt. The requested information was not provided. The application was still not dismissed. Instead, over a month after the deadline established by

timely file an amendment in response to the one written deadline that was established.[97]

Likewise, 47 C.F.R. § 73.1015 states the Commission "may, *in writing*, require from any applicant, permittee, or licensee written statements of fact relevant to a determination whether an application should be granted or denied."[98] A review of Commission adjudications reveals that requests for additional information or amendments are routinely made by letter prior to a dismissal for failure to respond to a Commission request. In fact, Commission dismissal did not occur until after the applicant had ignored the Commission's written requests for

---

letter, Commission staff orally requested the same material and provided another deadline. The information was still not provided. It was only then that the application was dismissed. Walker was never given a deadline, much less a written deadline. Walker did timely file its amendment in response to the public notice. Furthermore, the stations in *Tango,* if constructed at all, were constructed on a temporary basis. The Commission allowed for post dismissal curative amendments in *Tango* and accepted the applications *nunc pro tunc.* Walker's application at the time it was dismissed was letter perfect. The Commission cites *Tango* on numerous occasions to support its position that construction of a station and license applications must be complete when filed- no exceptions. *See Order* at fn. 39 and 40. However, that standard is prospective. The Commission specifically stated, "we direct the Bureau to reject any such attempts *in the future* and to consistently enforce sections 73.3598 (e)of the rules." (emphasis added) *Tango, at para 6.* The Tango decision was released on September 21, 2015 after the Commission Walker letter decision. Until the Commission's prospective *Tango* decision was released, Walker should have been allowed to amend and given a written deficiency letter.
[97] *See Media Bureau Designates May 29, 2015 as Pre-Auction Licensing Deadline*, Public Notice, 300 FCC Rcd. 393 (MB Jan. 28, 2015); *See* Amendment to FCC Form 302-DTV, File No. BLCDT-20090402AOD (filed May 28, 2015) (JA ___).
[98]  47 C.F.R. § 73.1015

33

additional information.[99]    Based again on past Commission precedent and procedures, the Commission should have made a written request prior to taking the drastic remedy of dismissing the License Application and underlying construction permit.

The Commission's *Order* is arbitrary and capricious by virtue of it being contrary to precedent, policies and procedures without explanation for this departure. It has treated similarly situated parties differently and has not articulated its rationale for doing so.

**II.      The Commission's *Order* Is Arbitrary and Capricious Because the Commission Failed to Adequately Consider the Equities Warranting the Grant of the License Application.**

Incredibly, and in disregard of the history of this long-pending application, the Commission notes it finds dismissal appropriate as a matter of policy on the ground that grant of the License Application would be inconsistent, "with the Commission's goals of prompt initiation of service and spectrum efficiency"[100] It

---

[99]    *See Rita A. Capobianchi*, 6 FCC Rcd. 4631, 4631 (1991) ("We deny Capobianchi's petition for reconsideration because it is undisputed that she failed to prosecute her application by knowingly ignoring the Commission's *official written request* for information." (emphasis added); *see also Tango Radio, LLC*, 27 FCC Rcd. 14836 (MB 2012), aff'd, *In the Matter of Tango Radio, LLC*, 2015 FCC LEXIS 2640, FCC 15-128 (2015); *Eagle Broad. Group, Ltd. v. FCC*, 563 F.3d 543, 547 (D.C. Cir. 2009); *Fireside Media*, 25 FCC Rcd. 7754, 7759 (2010); *Fatima Resp., Inc.*, 22 FCC Rcd. 8402 (2007); *Great Scott Broad.*, 22 FCC Rcd. 4795 (2007); *Sonoma Charter Sch.*, 21 FCC Rcd. 9438, 9439 (2006).
[100]    *Order* at ¶11(JA ___).

is Walker's contention that the License Application has *never* been processed by the Commission in an orderly way and that the Commission has shown no interest in doing so. Given the history of the License Application, dismissal is grossly inequitable.

The Commission makes much of the six-year pendency of the License Application.[101] Any assertion that Walker is responsible for undue delay is dwarfed by the *seventeen years* it took the Commission to process an uncontested singleton application and the additional two-year delay awaiting action on the Paxson pleading, which was only resolved because it was voluntarily dismissed. The Commission processes applications, not Walker. Walker is not responsible for the pace of the processing or the time it has taken the Commission to act on its application.

What is more, the Commission dismissed the License Application after it was letter perfect. Instead of dismissing the Walker License Application back in 2009 the Commission waited until after the amendment with the Interference Study was filed to dismiss the Walker License Application. Even assuming that the License Application was fatally defective when filed and the construction permit automatically forfeited, it took the Commission six years to make that

---

[101] *Order* at ¶ 11(JA ___).

determination.  The claim that it was Walker's failure to act that warrants dismissal rings hollow in light of this history.

The Commission claims that this lapse of time between the expiration of the construction permit and the Commission's letter decision is irrelevant.[102] It is not irrelevant to Walker that was assessed and paid significant annual regulatory fees for six years on Walker's " automatically forfeited" construction permit. Nor was it irrelevant to the Commission which continued to annually bill Walker regulatory fees because the Commission considered the construction permit very much alive and well. The Commission, by its actions, granted an implied waiver of rule 73.3598(e).

The Commission begs the question by claiming the formal dismissal in 2015 was simply a response to, "Walker's belated efforts to revive a long expired permit and that automatic cancellation followed from Walker's failure to timely comply with the unambiguous LMR condition"[103] At no time during those six years did the Commission ever treat the construction permit as long expired. On the contrary, there was communication with Commission staff concerning the Interference Study, the Commission collected regulatory fees, the Commission included WFBT in its Greenhill Report, and the Commission accepted the Walker amendment as

---

[102] *Order* at ¶12(JA ___).

[103] *Id.*

36

well as an application for a minor change in ownership filed as recently as 2015 which was granted.

The Commission also notes that the Station never provided broadcast television service, "an equitable consideration weighing decidedly against grant of the license application."[104] A decidedly greater equitable consideration is that dismissal of the License Application denies the public from ever benefiting from television service. Walker had a constructed television station at the time its License Application was filed, had a License Application on file and a Station ready to broadcast when the Commission dismissed its License Application.

### III.    Walker Is Eligible to Participate in the Incentive Auction

WFBT qualifies as an Incentive Auction eligible facility. WFBT is a full-power station that was authorized but not yet licensed as of February 22, 2012. The License Application, as amended, was filed before the May 29, 2015, pre-auction licensing deadline.[105]

The Commission's *Incentive Auction R&O* clearly sets forth the standards for eligibility for unlicensed stations. In its *Incentive Auction R&O*, the Commission states that, "we will exercise our discretion to protect the new full power television stations that were authorized by construction permits, but not yet

---

[104] *Id.*

[105] *See Media Bureau Designates May 29, 2015 as Pre-Auction Licensing Deadline*, Public Notice, 300 FCC Rcd. 393 (MB Jan. 28, 2015).

37

licensed, as of February 22, 2012."[106] The *Incentive Auction R&O* furthers states that "the public interest is best served by extending protection to certain categories of facilities that were not licensed or the subject of a pending license to cover application as of February 22, 2012. More specifically, we will protect: (1) the small number of new full power television stations that were authorized but not constructed or licensed as of February 22, 2012."[107] At the time the *Incentive Auction R&O* was released, this was precisely the regulatory posture of WFBT. WFBT had been authorized by a construction permit and it had on file a timely license to cover application.

The rationale for inclusion, which is applicable to WFBT, is clearly stated: "A decision not to protect certain facilities also may strand the investments broadcasters have made in these facilities, including equipment and construction costs, as well as a payment of legal and engineering costs associated with applying for and licensing of facility."[108]

Despite the clear language of the *Incentive Auction R&O,* the *Order* concludes that it is inapplicable to WFBT on the ground that the *Incentive Auction R&O,* "limited the new full power stations that would be extended discretionary protection under this category to four specific stations that were already licensed or

---

[106] *See Incentive Auction R&O* at ¶ 196.
[107] *Id.* at¶ 194
[108] *Id.* at ¶192.

38

had a valid construction permit." [109] Nowhere, however, does the *Incentive Auction R&O* limit the relief only to a specified four stations. If the Commission had intended to limit applicability to four specific stations it should have said so. Instead it used broad language. It stated, "more specifically, we will protect (1) the small number of new full power television stations that were authorized but not constructed or licensed as of February 22, 2012."[110]

The Commission attempts to limit the broad scope of this language by claiming, the *Incentive Auction R&O* identified only four stations as falling into this category: WACP, Atlantic City, NJ; WMWC, Galesburg, IL; KUKL-TV Kalispell, MT; and WMDE, Seaford, DE. The *Incentive Auction R&O identified* four stations subject to inclusion, but did not *limit* inclusion in the auction to those four stations.  In fact, it would be counterintuitive to draw that conclusion. First, the *Incentive Auction R&O* specifically states otherwise. It refers to providing protection to categories of stations, as in "full power stations that were authorized but not constructed or licensed as of February 22, 2012".[111] Second, had a very narrow exclusion been the intent, the Commission would have narrowly drafted the

---

[109] *Order* at ¶13(JA ___).

[110] *Incentive Auction R&O at 194.* Procedurally the Commission claims Walker's request to be included is an untimely petition for reconsideration. Based on the Commission's broad language, which included Walker, there was no basis for seeking reconsideration.

[111] *Id.*

language of the *Incentive Auction R&O* and simply and specifically, stated that WACP, *et al.,* will be included in the auction.[112]

The Commission also concluded that Walker did not qualify for the discretionary protection afforded other stations. However, like the other stations, Walker was issued a construction permit prior to February 22, 2012. Like the others, Walker invested significant resources to build and construct a television station. The Commission claims Walker was never on the air, but Walker was not permitted to go on air under the terms of its construction permit and was ready to broadcast if the Commission had granted the letter perfect License Application instead of dismissing it.[113] The Commission's concern for service to the public rings hollow when it had the option to allow Walker to provide service instead of permanently denying a new television service.

The Commission also asserts that allowing Walker discretionary protection would significantly impact the Commission's repacking flexibility.[114] Walker was

---

[112] The rationale for inclusion of this category of stations in the auction is applicable to Walker, "a decision not to protect certain facilities also may strand the investments broadcasters have made in these facilities, including equipment and construction costs, as well as payment of legal and engineering costs associated with applying for and licensing of that facility." *Id*. at para. 191

[113] Walker was prohibited from broadcasting until it was granted program test authority.

[114] The Commission stated, "Walker was authorized constructed facility on channel 14 which is a UHF channel, not a VHF channel. The authorized construction site for WFBT, is also located in upstate New York, approximately hundred miles from

40

included in the Greenhill Report[115] repacking analysis and could have been included. The procedural mechanism to request inclusion in the auction certainly anticipated the prospect of adding additional stations. The Commission, however, has chosen to maximize its flexibility by ignoring precedent and its procedures for processing license applications, and by denying the public a new television service.[116]

## CONCLUSION

Walker's License Application should have been granted. The Station was timely constructed and a license to cover the construction permit was timely filed. The License Application was complete in all respects but for the Interference Study. The Interference Study was timely filed in response to the Commission's Pre Auction Licensing Public Notice. The License Application was letter perfect at

---

the border with Canada. Repacking of the UHF band in this area is likely to be subject to numerous constraints from both international and domestic broadcast television stations, and protect Walker's facility would limit or repacking flexibility there." *Order* at ¶16(JA ___). As already noted, the *Incentive Auction R&O* did not limit inclusion to four specified stations. WFBT was included in the Incentive Auction Opportunities for Broadcasters Prepared for the Federal Communications Commission by Greenhill (Greenhill Report), evidencing an intent to include WFBT in the incentive auction.

[115] *See* fn. 11.

[116] The reverse auction has already commenced. Walker should be allowed to participate in the repacking process and granted relief for its exclusion to date from participation in the reverse auction. The Commission states that Walker does not contend it is entitled to mandatory protection. Walker does so contend. It filed a Petition for Eligible Entity Status.

the time the Commission dismissed it. Commission precedent establishes that omission of a land mobile interference study for channel 14 is not a defect warranting dismissal of the license application or the automatic forfeiture of the underlying construction permit. In every other instance where a channel 14 station has filed a late interference study, the underlying construction permit was not forfeited and the license application was granted. The Commission's dismissal and forfeiture is arbitrary and capricious and an unexplained departure from past practice. The Commission routinely allows amendments to correct deficiencies.

By billing and collecting annual regulatory fees, the Commission clearly considered the construction permit very much alive and well. Because of this and because of all other actions and events subsequent to filing the License Application, which also warrant equitable relief, the Commission granted an implied waiver of any rule providing for automatic forfeiture of the construction permit.

The Commission, by orally requesting the Interference Study be submitted by amendment, did not treat the construction permit as automatically forfeited. Walker, through counsel, emailed Commission staff on at least three occasions about engineering related to the requested study. No written deficiency letter was ever sent or deadline establish for submission of the Interference Study until the Commission's Pre Auction Licensing Public Notice.

42

Equity also warrants grant of the License Application. Walker's delay in submitting the Interference Study is dwarfed by the Commission's seventeen year delay in processing and granting the application. Furthermore, during the time the License Application has been pending, Walker has invested time and resources not only to construct the station, but for ongoing expenses. Walker was invoiced and paid six years of regulatory fees on its outstanding construction permit. The Commission also accepted the amendment with the Interference Study and at the time the Commission acted on the License Application it was letter perfect. Denial of the License Application, when Walker could have immediately begun broadcasting denies the public of ever benefiting from the television service offered by Walker.

Lastly, WFBT qualifies as an incentive auction qualified entity and is entitled to mandatory protection. It fulfills all the requirements to qualify as established by the Commission's *Incentive Auction R&O*.

WHEREFORE, Walker respectfully requests that the FCC's *Order* be vacated in its entirety, Walker's construction permit be reinstated, its License Application granted, its call sign reinstated. Walker also respectfully requests that its Petition for Eligible Entity Status be granted, including repacking protection, and that it be granted such other relief as to make it whole.

43

Dated: June 20, 2016                     Respectfully submitted,

                                         By: /s/ *A. Wray Fitch III*

                                         A. Wray Fitch III
                                         Gammon & Grange, PC
                                         8280 Greensboro Dr
                                         7th Floor
                                         McLean, VA 22102
                                         Tel: (703) 761-5013
                                         (C): (703) 489-5004
                                         awf@gg-law.com
                                         *Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a) (7)(C), undersigned counsel certifies that this brief complies with the applicable type-volume limitations. This brief was prepared using proportionally spaced type (Times New Roman, 14 point).

Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(e)(1), this brief contains 10,214 words. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word 2016) used to prepare this brief.

*/s/ A. Wray Fitch III*

A. Wray Fitch III
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102
Phone: (703) 761-5000
Fax: (703) 761-5023
Email: awf@gg-law.com
*Attorney for Appellant*

Dated: June 20, 2016

45

## CERTIFICATE OF SERVICE

I, A. Wray Fitch III, hereby certify that on June 20, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

James M. Carr
Federal Communications Commission
Office of the General Counsel
445 12th Street, S.W.
Washington, DC 20554
Email: james.carr@fcc.gov

Richard Kiser Welch
Federal Communications Commission
Office of the General Counsel
445 12th Street, S.W.
Washington, DC 20554
Email: richard.welch@fcc.gov

Jacob M. Lewis
Federal Communications Commission
Office of the General Counsel
445 12th Street, S.W.
Washington, DC 20554
Email: jacob.lewis@fcc.gov

William Scher
Federal Communications Commission
Office of the General Counsel
445 12th Street, S.W.
Washington, DC 20554
Email: william.scher@fcc.gov

*/s/ A. Wray Fitch III*

A. Wray Fitch III
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102
Phone: (703) 761-5000
Fax: (703) 761-5023
Email: awf@gg-law.com
*Attorney for Appellant*

46

# ADDENDUM

## TABLE OF CONTENTS

5 U.S.C.S. § 706………………………………………………………Add. 3

28 U.S.C. § 2342………………………………………………………Add. 4

47 U.S.C.  § 319………………………………………………………...Add. 6

47 U.S.C. § 402………………………………………………………Add. 8

47 C.F.R. § 73.1015………………………………………………Add. 13

47 C.F.R. § 73.3522………………………………………………Add. 13

47 C.F.R. § 73.3564………………………………………………Add. 19

47 C.F.R. § 73.3598………………………………………………Add. 23

## 5 U.S.C.S. § 706

## Scope of Review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall

(1)  compel agency action unlawfully withheld or unreasonably delayed; and

(2)  hold unlawful and set aside agency action, findings, and conclusions found to be--

(A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)  contrary to constitutional right, power, privilege, or immunity;

(C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)  without observance of procedure required by law;

(E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS§§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

Add. 3

(F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 28 U.S.C. § 2342

### Jurisdiction of court of appeals

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--

(1)  all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47;

(2)  all final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7 [7 USCS §§ 181 et seq. and §§ 501 et seq.], except orders issued under sections 210(e), 217a, and 499g(a) of title 7 [7 USCS §§ 210(e), 217a, and 499g(a)];

(3)  all rules, regulations, or final orders of--

(A)  the Secretary of Transportation issued pursuant to section 50501, 50502, 56101-56404, or 57109 of title 46 [46 USCS §§ 50501, 50502, 56101-56404, or

Add. 4

57109] or pursuant to part B or C of subtitle IV, subchapter III of chapter 311,

chapter 313, or chapter 315 of title 49 [49 USCS §§ 13101 et seq., 15101 et seq.

31131 et seq., 31301 et seq., or 31501 et seq.]; and

(B)  the Federal Maritime Commission issued pursuant to section 305, 41304,

41308, or 41309 or chapter 421 or 441 of title 46 [46 USCS § 305, 41304, 41309,

or §§ 42101 et seq. or 44101 et seq.];

(4)  all final orders of the Atomic Energy Commission made reviewable by section

2239 of title 42;

(5)  all rules, regulations, or final orders of the Surface Transportation Board made

reviewable by section 2321 of this title [28 USCS §2321];

(6)  all final orders under section 812 of the Fair Housing Act [42 USCS § 3612];

and

(7)  all final agency actions described in section 20114(c) of title 49.

Jurisdiction is invoked by filing a petition as provided by section 2344 of this title

[28 USCS §2344].

Add. 5

## 47 U.S.C. § 319

## Construction permits

(a)  Requirements. No license shall be issued under the authority of this Act for the operation of any station unless a permit for its construction has been granted by the Commission. The application for a construction permit shall set forth such facts as the Commission by regulation may prescribe as to the citizenship, character, and the financial, technical, and other ability of the applicant to construct and operate the station, the ownership and location of the proposed station and of the station or stations with which it is proposed to communicate, the frequencies desired to be used, the hours of the day or other periods of time during which it is proposed to operate the station, the purpose for which the station is to be used, the type of transmitting apparatus to be used, the power to be used, the date upon which the station is expected to be completed and in operation, and such other information as the Commission may require. Such application shall be signed by the applicant in any manner or form, including by electronic means, as the Commission may prescribe by regulation.

(b)  Time limitation; forfeiture. Such permit for construction shall show specifically the earliest and latest dates between which the actual operation of such station is expected to begin, and shall provide that said permit will be automatically forfeited if the station is not ready for operation within the time

specified or within such further time as the Commission may allow, unless prevented by causes not under the control of the grantee.

(c)  Licenses for operation. Upon the completion of any station for the construction or continued construction of which a permit has been granted, and upon it being made to appear to the Commission that all the terms, conditions, and obligations set forth in the application and permit have been fully met, and that no cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest, the Commission shall issue a license to the lawful holder of said permit for the operation of said station. Said license shall conform generally to the terms of said permit. The provisions of section 309(a), (b), (c), (d), (e), (f), and (g) [47 USCS § 309(a)-(g)] shall not apply with respect to any station license the issuance of which is provided for and governed by the provisions of this subsection.

(d)  Government, amateur, or mobile station; waiver. A permit for construction shall not be required for Government stations, amateur stations, or mobile stations. A permit for construction shall not be required for public coast stations, privately owned fixed microwave stations, or stations licensed to common carriers, unless the Commission determines that the public interest, convenience, and necessity

would be served by requiring such permits for any such stations. With respect to any broadcasting station, the Commission shall not have any authority to waive the requirement of a permit for construction, except that the Commission may by regulation determine that a permit shall not be required for minor changes in the facilities of authorized broadcast stations. With respect to any other station or class of stations, the Commission shall not waive the requirement for a construction permit unless the Commission determines that the public interest, convenience, and necessity would be served by such a waiver.

## 47 U.S.C. § 402

## Judicial review of Commission's orders and decisions

(a)  Procedure. Any proceeding to enjoin, set aside, annul or suspend any order of the Commission under this Act (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of title 28, United States Code [28 USCS §§ 2341 et seq.].

(b)  Right to appeal. Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

Add. 8

(1)  By any applicant for a construction permit or station license, whose application is denied by the Commission.

(2)  By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

(3)  By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.

(4)  By any applicant for the permit required by section 325 of this Act [47 USCS § 325] whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

(5)  By the holder of any construction permit or station license which has been modified or revoked by the Commission.

(6)  By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1), (2), (3), (4), and (9) hereof.

(7)  By any person upon whom an order to cease and desist has been served under section 312 of this Act [47 USCS §312]. [47 USCS § 312].

(8)  By any radio operator whose license has been suspended by the Commission.

Add. 9

(9)  By any applicant for authority to provide interLATA services under section 271 of this Act [47 USCS § 271] whose application is denied by the Commission.

(10)  By any person who is aggrieved or whose interests are adversely affected by a determination made by the Commission under section 717(a)(3) [47 USCS § 618(a)(3)].

(c)  Filing notice of appeal; contents; jurisdiction; temporary orders. Such appeal shall be taken by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of. Such notice of appeal shall contain a concise statement of the nature of the proceedings as to which the appeal is taken; a concise statement of the reasons on which the appellant intends to rely, separately stated and numbered; and proof of service of a true copy of said notice and statement upon the Commission. Upon filing of such notice, the court shall have jurisdiction of the proceedings and of the questions determined therein and shall have power, by order, directed to the Commission or any other party to the appeal, to grant such temporary relief as it may deem just and proper. Orders granting temporary relief may be either affirmative or negative in their scope and application so as to permit either the maintenance of the status quo in the matter in which the appeal is taken or the restoration of a position or status terminated or adversely affected by the order

appealed from and shall, unless otherwise ordered by the court, be effective pending hearing and determination of said appeal and compliance by the Commission with the final judgment of the court rendered in said appeal.

(d)  Notice to interested parties; filing of record. Upon the filing of any such notice of appeal the appellant shall, not later than five days after the filing of such notice, notify each person shown by the records of the Commission to be interested in said appeal of the filing and pendency of the same. The Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of TTitle 28, United States Code.

(e)  Intervention. Within thirty days after the filing of any such appeal any interested person may intervene and participate in the proceedings had upon said appeal by filing with the court a notice of intention to intervene and a verified statement showing the nature of the interest of such party, together with proof of service of true copies of said notice and statement, both upon appellant and upon the Commission. Any person who would be aggrieved or whose interest would be adversely affected by a reversal or modification of the order of the Commission complained of shall be considered an interested party.

(f)  Records and briefs. The record and briefs upon which any such appeal shall be heard and determined by the court shall contain such information and material, and

Add. 11

shall be prepared within such time and in such manner as the court may by rule prescribe.

(g)  Time of hearing; procedure. The court shall hear and determine the appeal upon the record before it in the manner prescribed by section 706 of title 5, United States Code.

(h)  Remand. In the event that the court shall render a decision and enter an order reversing the order of the Commission, it shall remand the case to the Commission to carry out the judgment of the court and it shall be the duty of the Commission, in the absence of the proceedings to review such judgment, to forthwith give effect thereto, and unless otherwise ordered by the court, to do so upon the basis of the proceedings already had and the record upon which said appeal was heard and determined.

(i)  Judgment for costs. The court may, in its discretion, enter judgment for costs in favor of or against an appellant, or other interested parties intervening in said appeal, but not against the Commission, depending upon the nature of the issues involved upon said appeal and the outcome thereof.

(j)  Finality of decision; review by Supreme Court. The court's judgment shall be final, subject, however, to review by the Supreme Court of the United States upon writ of certiorari on petition therefor under section 1254 of title 28 of the United

Add. 12

States Code section 1254 of title 28 of the United States Code, by the appellant, by the Commission, or by any interested party intervening in the appeal, or by certification by the court pursuant to the provisions of that section.

## 47 C.F.R. § 73.1015

## Truthful written statements and responses to Commission inquiries and correspondence

The Commission or its representatives may, in writing, require from any applicant, permittee, or licensee written statements of fact relevant to a determination whether an application should be granted or denied, or to a determination whether a license should be revoked, or to any other matter within the jurisdiction of the Commission, or, in the case of a proceeding to amend the FM or Television Table of Allotments, require from any person filing an expression of interest, written statements of fact relevant to that allotment proceeding. Any such statements of fact are subject to the provisions of § 1.17 of this chapter.

## 47 C.F.R. § 73.3522

## Amendment of applications

(a)  Broadcast services subject to competitive bidding.

(1) Applicants in all broadcast services subject to competitive bidding will be subject to the provisions of §§ 73.5002 and 1.2105(b) regarding the modification of their short-form applications.

(2) Subject to the provision of § 73.5005, if it is determined that a long form application submitted by a winning bidder or a non-mutually exclusive applicant for a new station or a major change in an existing station in all broadcast services subject to competitive bidding is substantially complete, but contains any defect, omission, or inconsistency, a deficiency letter will be issued affording the applicant an opportunity to correct the defect, omission or inconsistency. Amendments may be filed pursuant to the deficiency letter curing any defect, omission or inconsistency identified by the Commission, or to make minor modifications to the application, or pursuant to § 1.65. Such amendments should be filed in accordance with § 73.3513. If a petition to deny has been filed, the amendment shall be served on the petitioner.

(3) Subject to the provisions of §§ 73.3571, 73.3572 and 73.3573, deficiencies, omissions or inconsistencies in long-form applications may not be cured by major amendment. The filing of major amendments to long-form applications is not permitted. An application will be considered to be newly filed if it is amended by a major amendment.

(4) Paragraph (a) of this section is not applicable to applications for minor modifications of facilities in the non-reserved FM broadcast service, nor to any application for a reserved band FM station.

(b) Reserved Channel FM and reserved noncommercial educational television stations. Applications may be amended after Public Notice announcing a period for filing amendments. Amendments, when applicable, are subject to the provisions of §§ 73.3514, 73.3525, 73.3572, 73.3573, 73.3580, and § 1.65 of this chapter. Unauthorized or untimely amendments are subject to return by the FCC's staff without consideration. Amendments will be accepted as described below and otherwise will only be considered upon a showing of good cause for late filing or pursuant to § 1.65 of this chapter or § 73.3514:

(1) A § 73.7002 Selectee. A Public Notice will announce that the application of a § 73.7002 Selectee (selected based on fair distribution) has been found acceptable for filing. If any Selectee's application is determined unacceptable the application will be returned and the Selectee will be provided one opportunity for curative amendment by filing a petition for reconsideration requesting reinstatement of the application. All amendments filed in accordance with this paragraph must be minor and must not alter the § 73.7002 preference.

Add. 15

(2) A § 73.7003 Tentative Selectee. A Public Notice will announce that the application of a § 73.7003 Tentative Selectee (selected through a point system) has been found acceptable for filing. If any Tentative Selectee's application is determined unacceptable the application will be returned and the Tentative Selectee will be provided one opportunity for curative amendment by filing a petition for reconsideration requesting reinstatement of the application. All amendments filed in accordance with this paragraph must be minor and must claim the same number of qualitative points as originally claimed, or more points than claimed by the applicant with the next highest point total.

(3) A Public Notice will identify all other reserved channel applications, such as non-mutually exclusive applications and the sole remaining application after a settlement among mutually exclusive applications. If any such application is determined unacceptable the application will be returned and the applicant will be provided one opportunity for curative amendment by filing a petition for reconsideration requesting reinstatement of the application. All amendments filed in accordance with this paragraph must be minor.

(c) Minor modifications of facilities in the non-reserved FM broadcast service.

(1) Subject to the provisions of §§ 73.3525, 73.3573, and 73.3580, for a period of 30 days following the FCC's issuance of a Public Notice announcing the tender of

an application for minor modification of a non-reserved band FM station, (other than Class D stations), minor amendments may be filed as a matter of right.

(2) For applications received on or after August 7, 1992, an applicant whose application is found to meet minimum filing requirements, but nevertheless is not complete and acceptable, shall have the opportunity during the period specified in the FCC staff's deficiency letter to correct all deficiencies in the tenderability and acceptability of the underlying application, including any deficiency not specifically identified by the staff. [For minimum filing requirements see § 73.3564(a). Examples of tender defects appear at 50 FR 19936 at 19945-46 (May 13, 1985), reprinted as Appendix D, Report and Order, MM Docket No. 91-347, 7 FCC Rcd 5074, 5083-88 (1992). For examples of acceptance defects, see 49 FR 47331.] Prior to the end of the period specified in the deficiency letter, a submission seeking to correct a tender and/or acceptance defect in an application meeting minimum filing requirements will be treated as an amendment for good cause if it would successfully and directly correct the defect. Other amendments submitted prior to grant will be considered only upon a showing of good cause for late filing or pursuant to § 1.65 or § 73.3514.

(3) Unauthorized or untimely amendments are subject to return by the Commission without consideration. However, an amendment to a non-reserved band application

Add. 17

will not be accepted if the effect of such amendment is to alter the proposed facility's coverage area so as to produce a conflict with an applicant who files subsequent to the initial applicant but prior to the amendment application. Similarly, an applicant subject to "first come/first serve" processing will not be permitted to amend its application and retain filing priority if the result of such amendment is to alter the facility's coverage area so as to produce a conflict with an applicant which files subsequent to the initial applicant but prior to the amendment.

NOTE 1 TO § 73.3522: When two or more broadcast applications are tendered for filing which are mutually exclusive with each other but not in conflict with any previously filed applications which have been accepted for filing, the FCC, where appropriate, will announce acceptance of the earliest tendered application and place the later filed application or applications on a subsequent public notice of acceptance for filing in order to establish a deadline for the filing of amendments as a matter of right for all applicants in the group.

Add. 18

## 47 C.F.R. § 73.3564

## Acceptance of applications

(a)

(1) Applications tendered for filing are dated upon receipt and then forwarded to the Media Bureau, where an administrative examination is made to ascertain whether the applications are complete. Except for applications for minor modifications of facilities in the non-reserved FM band, as defined in § 73.3573(a)(2), long form applications subject to the provisions of § 73.5005 found to be complete or substantially complete are accepted for filing and are given file numbers. In the case of minor defects as to completeness, a deficiency letter will be issued and the applicant will be required to supply the missing or corrective information. Applications that are not substantially complete will not be considered and will be returned to the applicant.

(2) In the case of minor modifications of facilities in the non-reserved FM band, applications will be placed on public notice if they meet the following two-tiered minimum filing requirements as initially filed in first-come/first-serve proceedings:

(i) The application must include:

(A) Applicant's name and address,

(B) Applicant's signature,

(C) Principal community,

(D) Channel or frequency,

(E) Class of station, and

(F) Transmitter site coordinates; and

(ii) The application must not omit more than three of the following second-tier items:

(A) A list of the other media interests of the applicant and its principals,

(B) Certification of compliance with the alien ownership provisions contained in 47 U.S.C. 310(b),

(C) Tower/antenna heights,

(D) Effective radiated power,

(E) Whether the antenna is directional or omnidirectional, and

(F) An exhibit demonstrating compliance with the contour protection requirements of 47 CFR 73.215, if applicable.

(3) Applications found not to meet minimum filing requirements will be returned to the applicant. Applications found to meet minimum filing requirements, but that contain deficiencies in tender and/or acceptance information, shall be given an

Add. 20

opportunity for corrective amendment pursuant to 73.3522 of this part.
Applications found to be substantially complete and in accordance with the
Commission's core legal and technical requirements will be accepted for filing.
Applications with uncorrected tender and/or acceptance defects remaining after the
opportunity for corrective amendment will be dismissed with no further
opportunity for amendment.

(b) Acceptance of an application for filing merely means that it has been the
subject of a preliminary review by the FCC's administrative staff as to
completeness. Such acceptance will not preclude the subsequent dismissal of the
application if it is found to be patently not in accordance with the FCC's rules.

(c) At regular intervals, the FCC will issue a Public Notice listing all long form
applications which have been accepted for filing. Pursuant to §§ 73.3571(h),
73.3572, and 73.3573(f), such notice shall establish a cut-off date for the filing of
petitions to deny. With respect to reserved band FM applications, the Public Notice
shall also establish a cut-off date for the filing of mutually exclusive applications
pursuant to § 73.3573(e). However, no application will be accepted for filing
unless certification of compliance with the local notice requirements of §
73.3580(h) has been made in the tendered application.

Add. 21

(d) The FCC will specify by Public Notice, pursuant to § 73.5002, a period for filing applications for new stations or for major modifications in the facilities of an existing station. Except for reserved band FM stations and TV stations on reserved noncommercial educational channels, applications for new and major modifications in facilities will be accepted only during these window filing periods specified by the Commission.

(e) Applications for minor modification of facilities may be tendered at any time, unless restricted by the FCC. These applications will be processed on a "first come/first served" basis and will be treated as simultaneously tendered if filed on the same day. Any applications received after the filing of a lead application will be grouped according to filing date, and placed in a queue behind the lead applicant. The FCC will periodically release a Public Notice listing those minor modification of facilities applications accepted for filing.

(f) If a non-reserved band FM channel allotment becomes vacant, after the grant of a construction permit becomes final, because of a lapsed construction permit or for any other reason, the FCC will, by Public Notice, announce a subsequent filing window for the acceptance of new applications for such channels.

(g) Applications for operation in the 1605-1705 kHz band will be accepted only if filed pursuant to the terms of § 73.30(b).

Add. 22

**47 C.F.R. § 73.3598**

**Period of construction**

 (a) Except as provided in the last two sentences of this paragraph, each original construction permit for the construction of a new TV, AM, FM or International Broadcast; low power TV; TV translator; TV booster; FM translator; or FM booster station, or to make changes in such existing stations, shall specify a period of three years from the date of issuance of the original construction permit within which construction shall be completed and application for license filed. Except as provided in the last two sentences of this paragraph, each original construction permit for the construction of a new LPFM station shall specify a period of eighteen months from the date of issuance of the construction permit within which construction shall be completed and application for license filed. A LPFM permittee unable to complete construction within the time frame specified in the original construction permit may apply for an eighteen month extension upon a showing of good cause. The LPFM permittee must file for an extension on or before the expiration of the construction deadline specified in the original construction permit. An eligible entity that acquires an issued and outstanding construction permit for a station in any of the services listed in this paragraph shall have the time remaining on the construction permit or eighteen months from the consummation of the assignment or transfer of control, whichever is longer, within

Add. 23

which to complete construction and file an application for license. For purposes of the preceding sentence, an "eligible entity" shall include any entity that qualifies as a small business under the Small Business Administration's size standards for its industry grouping, as set forth in 13 CFR 121 through 201, at the time the transaction is approved by the FCC, and holds

(1) 30 percent or more of the stock or partnership interests and more than 50 percent of the voting power of the corporation or partnership that will hold the construction permit; or

(2) 15 percent or more of the stock or partnership interests and more than 50 percent of the voting power of the corporation or partnership that will hold the construction permit, provided that no other person or entity owns or controls more than 25 percent of the outstanding stock or partnership interests; or

(3) More than 50 percent of the voting power of the corporation that will hold the construction permit if such corporation is a publicly traded company.

(b) The period of construction for an original construction permit shall toll when construction is prevented by the following causes not under the control of the permittee:

(1) Construction is prevented due to an act of God, defined in terms of natural disasters (e.g., floods, tornados, hurricanes, or earthquakes);

Add. 24

(2) The grant of the permit is the subject of administrative or judicial review (i.e., petitions for reconsideration and applications for review of the grant of a construction permit pending before the Commission and any judicial appeal of any Commission action thereon), or construction is delayed by any cause of action pending before any court of competent jurisdiction relating to any necessary local, state or federal requirement for the construction or operation of the station, including any zoning or environmental requirement; or

(3) A request for international coordination, with respect to an original construction permit for a new DTV station, has been sent to Canada or Mexico on behalf of the station and no response from the country affected has been received, or the licensee or permittee is challenging the response from Canada or Mexico on the grounds that the facility as approved would not permit the station to serve the population that is both approved by the Commission and served by the station's TV (analog) facility to be vacated by June 12, 2009.

(c) A permittee must notify the Commission as promptly as possible and, in any event, within 30 days, of any pertinent event covered by paragraph (b) of this section, and provide supporting documentation. All notifications must be filed in triplicate with the Secretary and must be placed in the station's local public file.

Add. 25

(d) A permittee must notify the Commission promptly when a relevant administrative or judicial review is resolved. Tolling resulting from an act of God will automatically cease six months from the date of the notification described in paragraph (c) of this section, unless the permittee submits additional notifications at six month intervals detailing how the act of God continues to cause delays in construction, any construction progress, and the steps it has taken and proposes to take to resolve any remaining impediments.

(e) Any construction permit for which construction has not been completed and for which an application for license has not been filed, shall be automatically forfeited upon expiration without any further affirmative cancellation by the Commission.